UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel R. Fast,                                                               Civ. No. 16-2499 (PAM/TNL)

　　　　　　　　Plaintiff,

v.                                                                                     **MEMORANDUM AND ORDER**

Nancy A. Berryhill,
Acting Commissioner of Social Security,

　　　　　　　　Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion is denied and Defendant's Motion is granted.

**BACKGROUND**

On January 17, 2013, Plaintiff Daniel Fast was shot in the abdomen. (Social Sec. Admin. Record ("Record") (Docket No. 15) at 305.) He suffered a grade 3 liver injury, a destructive colon injury, and a destructive gallbladder injury. (Id. at 562.) He also suffered chronic pain and mobility issues in his right leg. (Id. at 292.)

On February 20, 2013, Fast applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging that he became disabled on January 17, 2013, due to his gunshot wound. (Id. at 21.) The Commissioner of Social Security denied Fast's application initially. (Id. at 98-106.) Fast then requested a hearing and testified before an Administrative Law Judge ("ALJ"). The ALJ concluded that Fast was not disabled. (Id. at 18-34.)

An individual is disabled under the SSA if he is "unable to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual shall be determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B). A physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Id. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any SGA. Id. § 416.920(a)(4)(i). If he is not, the claimant must then establish that he has a severe medically determinable impairment or combination of impairments at step two. Id. § 416.920(a)(4)(ii). At step three, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1, the Commissioner must find that the claimant is disabled. Id. § 416.920(a)(4)(iii). If the claimant's impairment does not meet or is not medically equal to one of the listings, the evaluation proceeds to step four. The claimant then bears the burden of establishing his

residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  Id. § 416.920(a)(4)(iv); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

The ALJ found at step one that Fast had not engaged in any SGA after January 17, 2013, and that he had severe impairments, including gunshot wound residuals and plexopathy at step two.  (Record at 23-27.)  At step three, the ALJ found that Fast's impairment does not meet or is not medically equal to one of the listings.  (Id. at 27-28.)  At step four, the ALJ found that Fast had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (Id. at 28-32.)  The ALJ found that Fast could lift and carry ten pounds frequently and twenty pounds occasionally, sit six hours a day or stand or walk six hours a day, and occasionally, stoop, crouch, kneel, and crawl.  (Id.)  The ALJ placed other restrictions on Fast like no climbing ropes, ladders, and scaffolds.  (Id.)  Based on his RFC, Fast had no past relevant work.  (Id. at 32.)  The ALJ then proceeded to step five and found that Fast could perform a significant number of jobs in the national economy including cashier and delivery marker.  (Id. at 33.)  Thus, the ALJ determined that Fast was not disabled.  (Id. at 34.)

The ALJ's decision became the Commissioner's final decision after the Appeals Council denied Fast's request for review.  (Id. at 1-4.)  Fast then filed this lawsuit seeking

3

judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Both parties now move for summary judgment.

**DISCUSSION**

The Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. As long as substantial evidence in the record supports the Commissioner's decision, the Court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. Id.

Fast implicitly concedes that there is substantial evidence in the record to support the ALJ's conclusion that Fast was not disabled at the time of the hearing before the ALJ in March 2015. (Pl.'s Reply Mem. (Docket No. 28) at 2.) At that time, Fast could ride a bike, help his father with work around the house, and go to school. (Record at 29.) Fast argues, however, that the ALJ erred by not addressing Fast's condition before June 2014, when his condition began improving, yet still more than the required twelve months after he was shot. Fast contends that the Commissioner's decision is not supported by substantial evidence in the record because (A) Fast's impairment met or was medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1, during that time period; and (B) the ALJ erroneously determined Fast's RFC for that time period.

**A.     Listings**

Fast first argues that the ALJ erred in determining that Fast's impairment did not meet or was not medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1.  Fast maintains that his impairment between January and June 2014 met or was medically equal to Listings 1.02 and 11.14.

Listing 1.02 concerns the major dysfunction of a joint, which is characterized by a gross anatomical deformity, coupled with chronic joint pain and either joint space narrowing, bony destruction, or ankylosis shown by medically acceptable imaging.  20 C.F.R. Part 404, Subpart P, App'x. 1 § 1.02.  Fast contends that the medical evidence presented to the ALJ shows that his right knee was deformed after January 2014, because he was unable to extend his knee in a June 2013 physical exam.  (Record at 322.)  But during that same physical exam, Fast's doctor noted that he exhibited "normal range of motion" and that there was "no deformity" to report.  (Id.)  The ALJ's determination that Fast did not meet the requirements in Listing 1.02 for any twelve-month period is therefore supported by substantial evidence in the record.

Listing 11.14 concerns peripheral neuropathy, which is characterized by a claimant's neurological disorder that results in either (A) the disorganization of motor function in two extremities resulting in certain extreme limitations or (B) a marked limitation.  20 C.F.R. Part 404, Subpart P, App'x. 1 § 11.14.  Fast fails to identify which form of peripheral neuropathy he suffers from, although it appears that he is not arguing that he suffers from the disorganization of motor functions in two extremities.  (See Pl.'s Supp. Mem. (Docket No. 24) at 21-22.)  But regardless of which form of peripheral

5

neuropathy Fast contends he suffers from, Fast does not meet the requirements in Listing 11.14 because he fails to identify a neurological disorder he is suffering from that results in these problems. Fast focuses instead exclusively on the effects his gunshot wound had on his ability to ambulate effectively. That issue, however, is irrelevant to whether Fast has a neurological disorder that meets the requirements in Listing 11.14. The ALJ therefore did not err when determining that Fast does not meet the requirements in Listing 11.14.

**B.   RFC**

Fast also argues that the ALJ erroneously determined his RFC because the ALJ only addressed Fast's condition after June 2014, when his condition began to improve. As a result, according to Fast, the ALJ also failed to give proper weight to Fast's treating physician's opinion.

A claimant's RFC is the most a claimant can still do despite their limitations. 20 C.F.R. § 416.945(a)(1); see also McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney, 228 F.3d at 863 (citation omitted). A treating physician's opinion regarding an applicant's impairment "will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) (citations and quotation marks omitted).

Substantial evidence in the record supports the ALJ's RFC determination. Moreover, the ALJ properly addressed Fast's condition before June 2014. In July 2013, Fast reported that he could ride in a car to go to appointments, church, and the grocery store. (Record at 226-230.) He reported that he cooked, did laundry, shopped in store and online, paid bills, and handled his own savings account. (Id.) He also reported that he independently used public transportation. (Id. at 229.) Based on Fast's own description of his limitations just six months after he was shot, substantial evidence in the record supports the ALJ's RFC determination. And because the treating physician's opinion was inconsistent with Fast's own description of his limitations, the ALJ properly determined that the treating physician's opinion should be given less than controlling weight. See Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006) (discounting treating physician's opinion because it was inconsistent with claimant's daily activities).

## CONCLUSION

There is substantial evidence in the record to support the Commissioner's decision to deny benefits. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 26) is **GRANTED**; and

2. Plaintiff's Motion for Summary Judgment (Docket No. 23) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 24, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge